IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **DIONICIO CARBAJAL,** | § | |
| **Petitioner,** | § | |
| | § | |
| **vs.** | § | **C.A. NO.  C-07-146** |
| | § | |
| **RICK THALER,** | § | |
| **Director, Texas Department of** | § | |
| **Criminal Justice, Correctional Institutions** | § | |
| **Division,** | § | |
| **Respondent.** | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner is an inmate in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID") and currently is incarcerated at the Huntsville Unit in Huntsville, Texas.  Petitioner, proceeding *pro se* and *in forma pauperis*, filed this petition pursuant to 28 U.S.C. §§ 2241 and 2254 on February 16, 2007 (D.E. 1).  After filing a series of actions in both state and federal court, petitioner filed an amended petition for habeas corpus relief on February 24, 2009 (D.E. 42).  The underlying conviction which is the subject of the petition is a 2004 San Patricio County conviction for the felony offenses of indecency with a child, sexual assault of a child and aggravated sexual assault of a child. Petitioner alleges that his constitutional rights were violated in a number of ways during his trial.  On May 27, 2009 respondent filed a motion for summary judgment, to which petitioner responded on November 2, 2009 (D.E. 53, 58).

## JURISDICTION

This court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 and venue is appropriate in this court.  Wadsworth v. Johnson, 235 F.3d 959 (5th Cir. 2000).

## BACKGROUND

On July 14, 2004, following a plea of not guilty in a jury trial, petitioner was convicted in the 36th Judicial District Court of San Patricio County, Texas of two counts of indecency with a child, one count of sexual assault of a child, one count of sexual assault and three counts of aggravated sexual assault of a child (I C.R. at 58-66).[1]  He was sentenced to 99 years each on the aggravated sexual assault counts and 20 years each on the four other counts (Id.).  The sentences were to run concurrently (I C.R. at 59, 64).

### A.  Factual Background

The victim in this case (hereinafter, "B.C.") testified that petitioner (her father), first "French kissed" her when she was six years old and also left a hickey on her neck.  When she was 12 years old, he began to touch her vagina and breasts (3 R.R. 106).[2]  One day when her mother and brother were out of the house he came into the living room naked and he made her grab his penis and also made her put it into her mouth (3 RR 108-109).  After that, he began to sexually assault her a few times a week (3 R.R. 109).  Often, the assaults occurred in a shed he built on a piece of land they owned (3 R.R. 109-110).  He forced her to

---

[1]"C.R." refers to the clerk's record in Carbajal v. State, No. 13-04-00429-CR (Tex. App.–Corpus Christi, Aug. 30, 2005)(not designated for publication).  The clerk's record is located at D.E. 10.

[2]"R.R." refers to the reporter's record, or transcript, in this case.

have both anal and vaginal sex.  She cried and told him to stop but he would not and she could not push him off (3 R.R. 110-113).  He told her to never tell anyone because he would hurt her mother and brother and also because he would be locked up (3 R.R. 114).  She was afraid of him because he had slapped her once and also had thrown her into a sheet rock wall (3 R.R. 114-115).  He last assaulted her when she was 17 years old (3 R.R. 117).

B.C. decided to graduate from high school early and move out of her house to live with friends (3 R.R. 115, 118).  She did not tell her parents about her plans (3 R.R. 115-116).  When she was putting her things into the truck to leave her house, her father came home.  Her friends went to the police station and asked a police officer to go to her house to help her leave (3 R.R. 115-116).  The police officer, Chris Tharp, did so, and then took B.C. to the police station where she met up with her friends and the next day they all moved to College Station (3 R.R. 117-118).

B.C.'s brother contacted her and told her that her father was looking for her.  She was afraid that he would try to find her, so she called the police station to tell them that she was not missing but was living with friends (3 R.R. 119-120).  She decided to go the police station in person so that she could tell them what her father had done to her because she did not want him to be able to hurt her any more (3 R.R. 121).

At the police station she told Tharp about what her father had done to her.  He prepared two statements, which she read and signed.  The second statement was more specific regarding dates and her age at the time of the assaults (3 R.R. 121-122).  Tharp had B.C. make a telephone call to her father, which Tharp recorded (3 R.R. 123-124).  During

the conversation, her father stated that he had "tutored" her, explaining that he had done so in order that she would like men and not be a lesbian (3 R.R. 124).  B.C. also was examined by a nurse who specialized in pediatric victims of sexual assault (3 R.R. 65-66, 122).

During Chris Tharp's testimony, he stated that he took two statements from B.C., the second more detailed than the first (3 R.R. 12-14).  As part of his investigation, Tharp decided to tape a telephone conversation between petitioner and her father.  Tharp instructed the girl to talk to her father about things that had gone on in the past, or that were still going on (3 R.R. 14).  Despite objections by petitioner's counsel, the trial court ruled the tape admissible and played it for the jury (3 R.R. 17).

In relevant part, the following excerpts were heard by the jury:

Miss Carbajal: But the reason why I'm back in Mathis is because I kind of wanted to come back home.  But before I come home, I needed to tell you the real reason why I left.

Mr. Carbajal: Uh-huh.

Miss Carbajal: And, well, it's because, you know, like what we were doing, you know, how you were tutoring me, you know, for, like, five years.

Mr. Carbajal: Five years?  What are you talking about?

Miss Carbajal: You know, how we had sex and stuff like that, how you were tutoring me.

Mr. Carbajal: Uh-huh.

Miss Carbajal: Okay.  Well, that's why I left, because I didn't want that no more.

Mr. Carbajal: Uh-huh.

Miss Carbajal: And like–but they keep–I don't know, like they keep asking me, "has your dad done something to you?"

4

Mr. Carbajal: Who?

Miss Carbajal: The people that I was hanging with.

Mr. Carbajal: Uh-huh.

Miss Carbajal: And I kept telling them no, because, you know, like I told you I would never tell.

Mr. Carbajal: Right.

Miss Carbajal: Like they keep bugging me about it.  And I couldn't take it anymore, that's kind of why I want to come home.

Mr. Carbajal: That's why you don't want to come home?

Miss Carbajal: That's why I do want to come home, so they can leave me alone about it.  Because I don't want anyone to know about that.  I don't want nothing to happen to you.

Mr. Carbajal: Okay, well, like I said, it was just until I see that you're–you're not hot no more.

Miss Carbajal: I know.

Mr. Carbajal: I'm convinced–I'm convinced–I'm convinced that you're not, and it's all over.  There is no need for a continuation, you know.

(3 R.R. 20-21).

Miss Carbajal: You still don't understand why I left.

Mr. Carbajal: Anyway, it's none of their business what–what–what we do, you know, the tutoring and all that, you know.  It's not like–like I raped you or anything.  It was tutoring to make sure that you preferred men than women.

(3 R.R. 22).

Miss Carbajal: Well, I mean, it doesn't matter where I was at anymore because I want to come home now.  I mean, eventually I'm going to tell you, but . . .

Mr. Carbajal: What, you don't want to tell me now?

Miss Carbajal: No, because I want to, you know–I want to know if you want me back and if it'll stop, you know, what we were doing.

Mr. Carbajal: Yes, baby, yes, it's all over.  The class is over.  You showed me that–

Miss Carbajal: It's been going on for five year–five years since I was 12.

Mr. Carbajal: Oh, come on.

Miss Carbajal: I mean, that's a long time, Dad.

Mr. Carbajal: It's not–it wasn't no five years.

Miss Carbajal: Dad, it was since I was 12.  I was 12 years old.

Mr. Carbajal: Not a year.

Miss Carbajal: I hadn't even started my period yet.

Mr. Carbajal: Oh, well, it's unmaterial (sic) about this here, but hey. . .

Miss Carbajal: But, like, people are talking.

Mr. Carbajal: It wasn't like–like–like I raped you or anything.  It was not–it was different than what it–what it looks like, you know.

(3 R.R. 23-24).

The nurse who examined B.C. testified that her examination was neither consistent nor inconsistent with her reported history of sexual assault (3 R.R. 97-98).  There was no trauma to her vaginal area or her anus, but trauma would not be expected unless the assault had occurred in the past 72 hours (3 R.R. 78-80).

Petitioner's attorney called petitioner's wife, sister and son to testify.  They all stated that petitioner and his daughter did not spend very much time alone and that they had no indication that she was afraid of her father or did not want to spend time with him.

6

**B.  Procedural Background**

Petitioner, represented by counsel, filed a direct appeal and his conviction was affirmed.  Carbajal v. State, No. 13-04-00429-CR (Tex. App.– Corpus Christi, Aug. 30, 2005)(not designated for publication).  Petitioner did not file a petition for discretionary review ("PDR") at that time, but filed an application for habeas corpus relief in state court, arguing that his attorney did not advise him of the affirmation of his conviction in time to file the PDR.  Ex Parte Carbajal, App. No. WR-66,713-01 at 19, 153.  The application was dismissed on January 31, 2007 for failure to comply with TEX. R. APP. P. § 73.1.  Id. at "Action Taken" page.

Petitioner filed a second application for habeas corpus relief on February 15, 2007.  Ex Parte Carbajal, App. No. WR-66,713-02 at 6-25 and was granted the right to file an out-of-time PDR, which he did.  Id. at "Action Taken" page.  The PDR was refused on December 5, 2007.  Carbajal v. State, No. PD-0789-07.  Petitioner filed a third habeas corpus action on October 20, 2008 and it was denied without written order on December 31, 2008.  Ex Parte Carbajal, App. No. WR-66,713-03 at 1-52 and "Action Taken" page.

In the meantime, petitioner filed this application in federal court on February 16, 2007.  Respondent's federal application was dismissed without prejudice for failure to exhaust his state court remedies (D.E. 15, 19, 20).  Petitioner subsequently filed a motion to amend or vacate the final judgment and asked that his federal cause of action be abated pending exhaustion of his state remedies, and respondent filed a response (D.E. 21, 24).  Petitioner's motion was granted and his federal petition was ordered stayed and abated and

administratively closed (D.E. 28, 33).  Petitioner filed a motion to reopen his case and also

filed an amended petition on February 24, 2009 (D.E. 40, 42).  The motion to reopen the

case was granted the same day (D.E. 41).

In his current habeas application, petitioner makes the following arguments:

1.   He received ineffective assistance of counsel.  Specifically, his counsel

    a.   Failed to file crucial and important pretrial motions;

    b.   Failed to appear at an important pretrial conference;

    c.   Failed to prepare for trial by doing basic research, reviewing the testimony of key witnesses, and familiarizing herself with available relevant documents;

    d.   Failed to investigate whether B.C. was fabricating the allegations;

    e.   Failed to obtain an investigator to make a factual inquiry into whether the allegations were fabricated;

    f.   Failed to obtain an expert witness to rebut the State's argument that B.C's hymen had regenerated;

    g.   Failed to obtain an expert to analyze the tape to determine the reliability of the statements made;

    h.   Refused to call petitioner's other daughter, LeAnna, who would have testified that B.C. was fabricating her story to retaliate against her father for having stopped sending her money;

    i.   Refused to introduce evidence of B.C's prior sexual history;

    j.   Failed to inform the jury panel during voir dire that petitioner was presumed innocent;

    k.   Failed to have a crucial *in camera* discussion recorded by the court reporter;

    l.   Failed to promptly file a notice of appeal which resulted in his motion for new trial not being ruled upon;

    m.   Grossly misstated the law during her closing argument;

    n.   Called a community supervision officer as a witness, who testified that petitioner was not a good candidate for probation;

    o.   Abandoned him at the conclusion of the trial and refused to file a motion for new trial, and instead filed a notice of appeal which voided his motion for new trial;

    p.   Failed to object to the following:

        (1)   During voir dire when the prosecutor made inappropriate comments and asked impermissible hypothetical questions;

(2)    The court's decision to not provide a Spanish-speaking attorney when petitioner asked for one;

(3)    Jason Danz's testimony as inadmissible under the excited utterance exception to the hearsay rule;

(4)    The state's use of multiple outcry witnesses;

(5)    The state's use of Tharp as an outcry witness;

(6)    Tharp's testimony about his interview with B.C. and the tape-recorded conversation between petitioner and B.C.;

(7)    Tharp's statement that B.C. had been truthful in her statements;

(8)    The prosecutor's comments that petitioner was a "molester" and "pedophile" before a finding of guilt;

(9)    The prosecutor acting as a witness by detailing the female sexual organ on a chalkboard and giving the jurors a biology lesson;

(10)   The court's charge when it constituted a constructive amendment of the indictment and allowed the jurors to enter findings of guilt on each count without an unanimous verdict;

(11)   The testimony of the community supervision officer when she testified that petitioner would not be a good candidate for probation;

q.    Failed to request a suppression hearing to impeach Tharp's testimony and also to establish that he had played a role in assisting B.C. to "run away" when she was still a minor;

r.    Failed to request a ten-day period after the new indictment was introduced at his trial;

s.    Failed to have a Spanish-speaking attorney appointed to him;

2.    His due process rights were violated in the following manner:

a.    Tharp and Danz were allowed to testify as outcry witnesses;

b.    He was not allowed to present a viable defense of fabrication;

c.    His attorney refused to seek evidence of B.C.'s prior sexual history;

d.    The prosecutor engaged in misconduct in the following ways;

(1)    When she referred to petitioner as a "child molester" and "pedophile;"

(2)    When she asked the community supervision officer if petitioner was a candidate for probation;

(3)    When she suppressed evidence of the missing person's report petitioner filed after his daughter left with Tharp;

(4)    When she introduced an amended indictment with five additional counts after the trial had commenced;

e.    When his attorney called a witness that was favorable to the prosecution rather than to petitioner;

  f. When the prosecutor acted as a witness when she drew the female sexual organ on a chalkboard and gave her opinion on what the evidence meant, and also when she gave her opinion about what parts of the tape-recorded conversation meant, even though they were unintelligible;

  g. When the tape-recorded conversation was introduced as evidence;

  h. Because of the totality of the errors and their cumulative effect;

3. His conviction was obtained in violation of the Constitution and was a result of there having been a constructive amendment of the indictment; and

4. He is actually innocent of the charges.

In many instances, petitioner complains that the trial court erred, or that he was denied due process, and also complains that his attorney was ineffective for not advocating on his behalf or objecting to the perceived violation.  Where petitioner makes multiple claims based on the same factual allegation, the claims are addressed together.

In his motion for summary judgment, respondent argues that petitioner's case is time-barred and also argues that he has failed to meet his burden of proof under 28 U.S.C. § 2254(d).  Petitioner counters that respondent failed to address the underlying question of whether his conviction was constitutional.

## APPLICABLE LAW

**A. Timeliness**

Respondent seeks to dismiss petitioner's application for habeas corpus on the grounds that the application was filed outside the one-year limitation period set by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  This issue was addressed previously in the memorandum and recommendations filed on September 6, 2007 and June 2, 2008 (D.E. 15, 28) and adopted by the district court on August 18, 2008 (D.E. 19, 33).  For the reasons

given in those memoranda, it is once again recommended that petitioner's habeas corpus application be considered timely filed.

**B.     Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d) (West 1996).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on a question of law or if the state court decides a case differently than the Court on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. Williams v. Taylor, 529 U.S. 362, 412-413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d (2000). Although "unreasonable" is difficult to define, the Supreme Court noted that it is an objective, rather than subjective, standard and emphasized that there is a critical difference between an unreasonable application of federal law and a merely "incorrect" or

11

"erroneous" application of federal law.  Neal v. Puckett, 239 F.3d 683, 687 (5th Cir. 2001)(citing Williams, 120 S.Ct. at 1522-1523).  A federal court has no authority to grant habeas corpus relief simply because it concludes in its independent judgment that a state court's judgment is erroneous or incorrect.  Neal, 239 F.3d at 687.  In determining whether a state court decision in a habeas case is reasonable, the focus is on the ultimate legal conclusion reached by the state court and not on whether the state court considered and discussed every angle of the evidence.  "[T]he only question for a federal habeas court is whether the state court's determination is 'at least minimally consistent with the facts and circumstances of the case.'" Neal, 239 F.2d at 696 (citing Hennon v. Cooper, 109 F.3d 330, 334-335 (7th Cir. 1997)).

A state court's factual findings are presumed to be correct and a petitioner has the burden of rebutting the presumption with clear and convincing evidence.  Garcia v. Quarterman, 454 F.3d 441, 444 (5th Cir. 2006)(citations omitted).  This deference extends not only to express findings of fact, but to the implicit findings of the state court.  Id.  In addition, if a decision by a state court, such as the refusal of the PDR in this case, is silent as to the reasons for the refusal, a federal habeas court can "look through" the decision and evaluate the last reasoned state court decision.  Bledsue v. Johnson, 188 F.3d 250, 256 (5th Cir. 1999).

C.      **Ineffective Assistance of Counsel**

To prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-prong test set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80

L.Ed.2d 674 (1984). He must show that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable. Id., 466 U.S. at 687-88, 104 S.Ct. at 2064. Petitioner must show "significant prejudice" in a noncapital context. Armstead v. Scott, 37 F.3d 202 (5th Cir. 1994)(citing Spriggs v. Collins, 993 F.2d 85, 88, n. 4 (5th Cir. 1993)).

Judicial scrutiny of counsel's performance must be highly deferential and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. A court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Id., 466 U.S. at 690, 104 S.Ct. at 2066.

**D.     Trial Court Error**

In order to obtain habeas corpus relief based on a non-constitutional error by a trial court, a petitioner must show that the error had a substantial and injurious effect or influence in determining the jury's verdict. United States v. Polasek, 162 F.3d 878, 886 (5th Cir. 1998)(citations omitted). This standard applies to evidentiary rulings, Id. at 885-886; alleged error in an unobjected-to trial court charge, Bryan v. Wainwright, 588 F.2d 1108,

13

1110-1111 (5th Cir. 1979); and allowing remarks by a prosecutor during opening and closing argument. Andrews v. Cain, 71 F.Supp.2d 560, 564 (E.D. La., 1999).

> **1.      Counsel failed to file pretrial motions, failed to attend an important pretrial conference and failed to have an *in camera* discussion recorded by the court reporter (Items 1.a., 1.b., and 1.k.)**

Petitioner does not identify the pretrial motions he believes his counsel should have filed in his federal petition, but in his state court petition he argued that his counsel should have filed a motion for discovery compelling the state to declare its intent to use the testimony of an outcry witness as required by TEX. CRIM. PROC. CODE ANN. § 38.072 (Vernon 1995).  Ex Parte Carbajal, WR-66,713-03 at 12.  However, that statute only applies to cases where the victim is a child 12 years of age or younger.[3]  The victim in petitioner's case was 17 at the time she told others about the abuse and the statute would not have applied.  There was no reason for petitioner's attorney to file a motion to compel and the Sixth Amendment does not require counsel to file frivolous motions.  United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1995).

The conference petitioner's attorney missed was the pretrial conference scheduled for April 19, 2004.  Ex Parte Carbajal, WR-66,713-03 at 12.  The jury trial was subsequently set for May 3, 2004 and reset several times until it went to trial on July 12, 2004.  Ex Parte Carbajal, WR-66,713-03 at 72.  Petitioner does not indicate how his attorney missing the conference resulted in prejudice and no prejudice is indicated in the record.

---

[3]The statute has since been amended to include children 14 years of age and younger. TEX. CRIM. PROC. CODE ANN. § 38.072 (Vernon 2009).

14

Regarding the *in camera* meeting that was not made part of the record, petitioner is referring to a discussion between the trial court and his attorney after voir dire but before the trial began.  Ex Parte Carbajal, WR-66,713-03 at 14.  The attorney told the judge that she wanted to talk to him "briefly about some evidentiary matters, like the tape and some other things to see how you wanted to handle that."  The judge asked her if she wanted any of it to be on the record and she said she did not think so.  The judge responded "Okay, very good. Then recess the case and visit with the attorneys in just a few minutes."  (2 R.R. 112). Petitioner argues that there is nothing in the record regarding the issues his counsel discussed with the judge and that it is impossible for him to formulate a ground of error based upon the outcome of the *in camera* discussion with the judge.  Ex Parte Carbajal, WR-66,713-03 at 14.

Petitioner has failed to state a claim under Strickland based on these facts.  He has made no effort to show that the decision to discuss the issues off the record was unreasonable, or that the discussion affected the outcome of the trial.  Petitioner has failed to make out an ineffective assistance of counsel claim based on these allegations and judgment should be entered for respondent on these claims.

> **2.      Counsel failed to prepare for trial by doing research, reviewing documents and reviewing the testimony of witnesses (Item 1.c.)**

Petitioner's counsel said in an affidavit filed in the state habeas proceeding that she investigated the facts, witnesses and location of the alleged offenses and that she interviewed

and reviewed the testimony of all the witnesses and reviewed the transcript of the first trial.[4]

(Affidavit of Cynthia Foster, located at <u>Ex Parte Carbajal</u>, WR-66,713-01 at 144-145).

Petitioner provided no evidence to the contrary but offers only his conclusory allegations

regarding his counsel's failure to prepare for trial.  Although *pro se* habeas petitions are

construed liberally, conclusory allegations on a critical issue are insufficient to raise a

constitutional issue.  <u>Koch v. Puckett</u>, 907 F.2d 524, 530 (5th Cir. 1990)(citing <u>Ross v.</u>

<u>Estelle</u>, 694 F.2d 1008, 1011-12 and n. 2 (5th Cir. 1983)).  Petitioner has failed to describe

the factual bases of his claims and also has failed to show what information additional

investigation would have revealed and how it would have affected the outcome of the trial.

Accordingly, judgment should be entered for respondent on this claim.

**3.      Counsel failed to obtain an investigator to prove that B.C. was fabricating the allegations against petitioner and consequently he was not allowed to present a viable defense of fabrication (Items 1.d.; 1.e.; 2.b).**

In her affidavit, petitioner's counsel stated that she did her own investigation as to the

facts, witnesses and location of the allegations.  Witnesses she interviewed included B.C.'s

friends, police officers who were involved with the parties prior to the report being filed, and

petitioner's wife, sister, son and other children.  Petitioner's counsel did not believe that an

investigator would have made any more factual inquiries than she did (Foster Aff., <u>Ex Parte</u>

<u>Carbajal</u>, WR-66,713-01at 145).

---

[4]Petitioner initially was tried on three counts of aggravated sexual assault of his daughter in cause number S-03-3295-CR in the 156th Judicial District Court of San Patricio County, Texas, but a hung jury resulted in a mistrial.  <u>Ex Parte Carbajal</u>, WR-66, 713-01 at 23.

To establish a claim based on counsel's failure to hire an investigator, petitioner must allege with specificity what the investigation would have revealed and how it would have benefitted him.  United States v. Glinsey, 209 F.3d 386, 393 (5th Cir. 2000).  He must also show a reasonable probability that, but for counsel's unprofessional errors, the sentence would have been significantly less harsh.  Id. (citing Spriggs, 993 F.2d at 88).  Petitioner has offered no evidence regarding information an investigator could have uncovered that his counsel did not know about at trial.  Accordingly, he has failed to show that the decision not to hire an investigator was unreasonable or that he was prejudiced by the decision.

> **4.      Counsel failed to obtain an expert witness to rebut the State's argument that B.C.'s hymen had regenerated (Item 1.f.).**

Petitioner claims that his counsel should have hired a medical expert to counter the examining nurse's testimony that B.C.'s hymen had regenerated.  However, petitioner mischaracterizes the testimony in the record.  The nurse did not testify that B.C.'s hymen regenerated.  Rather, she testified that although many people believe that the hymen is a barrier which is intact until it is penetrated and broken, in reality it is an elastic collar that sits on the opening of the vagina (3 R.R. 76, 78).  Because B.C. was 17 at the time of the exam and was estrogenic, her hymen was able to stretch to accommodate a penis without being injured or scarred (3 R.R. 78).  On cross-examination, petitioner's attorney solicited testimony from the nurse that her physical examination of B.C. neither corroborated nor contradicted her allegations that she had been sexually assaulted by petitioner for five years (3 R.R. 97-98).  Based on the record, petitioner's attorney had no reason to hire an expert to contradict the testimony of the nurse, because the nurse did not testify that B.C.'s hymen had

regenerated.  Moreover, the attorney solicited testimony from the nurse that the physical examination of B.C. did not incriminate the petitioner.  Accordingly, petitioner has failed to show that his attorney was unreasonable for not calling an expert witness to refute the nurse's testimony.

> **5.    Counsel failed to obtain an expert to analyze the audiotape to determine the reliability of the statements made and did not otherwise object to the admission of the tape (Item 1.g.; 2.g.).**

Petitioner has failed to present any evidence showing that an expert was needed to determine the reliability of the statements made on the tape.  It was authenticated by Tharp (3 R.R. 14-16) and the record contains no indications that the tape was unintelligible.  Petitioner's attorney stated that the prosecutor laid the proper foundation for the tape and B.C. identified the voices on the tape as belonging to herself and petitioner (Foster Aff., Ex Parte Carbajal, WR-66,713-01at 146).  In addition, petitioner's counsel objected to the tape as hearsay and as a violation of petitioner's right to privacy and also argued that it was obtained in an entrapment procedure, but her objections were overruled (3 R.R. 17).  Without some evidence that the tape was not authentic, or that his attorney could have made a valid objection to the admission of the tape, petitioner cannot make out an ineffective assistance of counsel claim or a denial of due process claim based on these facts.

> **6.    Counsel refused to call petitioner's daughter, LeAnna, who would have testified that B.C. was fabricating her story to retaliate against her father because he had stopped sending her money (Item 1.h.).**

When making a habeas claim based on counsel's failure to call a witness, the petitioner must name the witness, show that the witness was available to testify and would

have done so, set out the content of the witness's proposed testimony and show that the testimony would have been favorable to a particular defense.  Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009)(citing Bray v. Quarterman, 265 Fed.Appx. 296, 298 (5th Cir. 2008) and Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985)).  Such claims are not favored because the presentation of witness testimony is essential strategy and so within the trial counsel's domain and speculation as to what the witnesses would have testified is too uncertain.  Id.

Petitioner's counsel stated in her affidavit that she talked to LeAnna and that counsel and petitioner agreed that it would be best not to call her.  In addition, the attorney stated that the prosecutor had taped conversations between petitioner and LeAnna, the contents of which would have been extremely detrimental to petitioner (Foster Aff., Ex Parte Carbajal, WR-66,713-01at 146).  In order for petitioner to refute these statements by his attorney, he would need to supply an affidavit from LeAnna affirming that she was available to testify at trial and would have done so.  In addition, she would need to have set out what her testimony would have been.  Then, petitioner still would have to show that the decision not to call LeAnna was unreasonable in light of the "extremely detrimental" tape recorded conversations between petitioner and LeAnna.  Because there is no such evidence in the record, petitioner cannot show that his counsel was ineffective for failing to call LeAnna.

**7.      Counsel refused to introduce evidence of B.C.'s prior sexual history (Item 1.i.; 2.c.).**

Petitioner complains that his attorney failed to introduce evidence regarding B.C.'s prior sexual history.  Reputation or opinion evidence of past sexual behavior of an alleged

victim of sexual assault is not admissible in a prosecution for sexual assault. TEX. R. EVID. 412(a). Evidence of specific allegations of an alleged victim's past sexual behavior is not admissible unless it is necessary to rebut or explain scientific or medical evidence offered by the State; or is offered by the accused upon the issue of whether the alleged victim consented to the sexual behavior which is the basis of the offense charged; it relates to the motive or bias of the alleged victim; or is constitutionally required to be admitted and its probative value outweighs the danger of unfair prejudice. TEX. R. EVID. 412(a). Petitioner has failed to produce any evidence or argument showing that evidence of B.C.'s past sexual behavior was available, much less that it was admissible under the statute. Without doing so, he cannot show that his counsel was ineffective for failing to introduce evidence of B.C.'s prior sexual history.

### 8. Counsel failed to inform the jury panel during voir dire that petitioner was presumed innocent (Item 1.j.).

The record shows that the court instructed the jury that petitioner was presumed innocent and that his attorney also discussed the fact that an arrest or indictment does not mean that the accused is guilty (2 R.R. 11-13, 72-73, 91). Petitioner's claim that his attorney committed error in this regard has no basis in the record and judgment should be entered for the respondent on this issue.

### 9. Counsel failed to promptly file a notice of appeal which resulted in a motion for new trial not being ruled upon (Items 1.l. and 1.o.).

Petitioner's trial concluded on July 15, 2004 (5 R.R. 1). Petitioner's attorney stated in her affidavit that at the conclusion of the trial she asked him if he wanted to file an appeal

and he told her that he wanted to discuss it with his family and they would contact the attorney.  The family notified her that he wanted to appeal and she filed a notice of appeal on August 11, 2004 (Foster Aff., Ex Parte Carbajal, WR-66,713-01at 146; I C.R. 68-69).

A motion for new trial is a prerequisite to presenting a point of error on appeal only when necessary to adduce facts not in the record.  TEX. R. APP. P. 21.2.  There are specific grounds on which a defendant can be granted a new trial.  TEX. R. APP. P. 21.3.  A defendant may file a motion for new trial before, but no later than 30 days after, the date on which the trial court imposes a sentence in open court.  TEX. R. APP. P. 21.4.

Petitioner does not describe on what grounds his attorney should have filed a motion for new trial and does not explain what he means when he asserts that his motion for new trial was not ruled on by the court.  Without more, petitioner cannot make out an ineffective assistance of counsel claim based on these facts.

### 10.    Counsel grossly misstated the law during her closing argument (Item 1.m.).

Petitioner fails to explain in what way his attorney misstated the law during closing argument.  Accordingly, summary judgment should be entered for respondent on this issue.

### 11.    Counsel called a community supervision officer during the punishment phase of his trial and she testified that he was not a good candidate for probation (Item 1.n.; 1.p.(11); 2.d.(2); 2.e.).

Petitioner's attorney called Rosie Franco, a community supervision officer, during the punishment phase of the trial.  Franco described the conditions under which convicted sex offenders have to live when they are given probation, such as having to report to their probation officer twice a month, having to attend sex offender counseling once a week, not

being allowed to go within 1,000 feet of a school or business intended for children, not being allowed to accompany any person under the age of 18 without the parents present and not being allowed to associate with the victim or go anywhere near the victim through school or employment (4 R.R. 42).  Upon cross-examination, Franco stated that based on what she knew about petitioner's case, it was not one in which she would recommend probation (4 R.R. 45).

Petitioner argues that his attorney provided ineffective assistance of counsel when she called Franco as a witness.  In her affidavit, petitioner's attorney stated that in all cases where community supervision is a possibility, she always calls a community supervision officer to explain all the restrictions of community supervision so the jurors will understand that it is not as easy as they may believe.  Also, in a case involving a sex offender, she wants the jury to understand that the community supervision department has a "zero tolerance" policy for violations of the conditions of probation (Foster Aff., Ex Parte Carbajal, WR-66,713-01at 147).

"'A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'" Lave v. Dretke, 416 F.3d 373, 380 (5th Cir. 2005)(citing United States v. Jones, 287 F.3d 325, 331 (5th Cir. 2002)).  Counsel in this case made a strategic decision to call the community supervision officer to testify that granting probation to petitioner would impose stringent conditions on him.  Petitioner has not shown that the decision permeated the trial with obvious unfairness.  He might be able to

make such a claim if it appeared that the jury had struggled with the issue of probation, but it sentenced him to the maximum sentence on all counts after deliberating for a little over an hour (5 R.R. 11-14). Nothing in the record indicates that the outcome of the punishment phase of the trial would have been different had his attorney not called Franco to testify. Accordingly, summary judgment should be entered for respondent on this issue.

12. **Counsel failed to file a motion to suppress Tharp's testimony and also failed to establish that Tharp had played a role in helping B.C. to run away while she was still a minor (Item 1.q.; 2.d.(3)).**

Petitioner does not describe any grounds on which his attorney could have sought to suppress Tharp's testimony and none are apparent from the record. When petitioner's attorney cross-examined Tharp, she established that he had gone with B.C. to her house to gather her things when she was leaving to go to College Station. Tharp stated that he determined that B.C. was 17 and did not know whether she told petitioner of her plans to leave home or not (3 R.R 39-40). The record does not support petitioner's allegations that his attorney was ineffective in any way regarding Tharp's testimony, or that there were grounds on which to exclude his testimony.

13. **Counsel failed to request a 10-day period after the new indictment was introduced at his trial (Item 1.r.;1.p.(10); 2.d.(4); 3).**

Under Texas law, when a jury charge allows conviction on an unindicted offense, the error is fundamental and reversal is required. Ricalday v. Procunier, 736 F.2d 203, 207 (5th Cir. 1984)(citations omitted). If an attorney fails to object to a jury charge which results in a defendant being convicted of a crime he was never charged with committing, the error is

considered to be professionally unreasonable.  Id. at 207-208.  A petitioner must still show prejudice under such circumstances.  Id. at 208.

In this case, petitioner has failed to show that a new, or amended indictment was introduced at trial.  The indictment, filed against petitioner on March 12, 2004, charged him with two counts of indecency with a child, three counts of aggravated sexual assault of a child, one count of sexual assault of a child and one count of sexual assault.  Ex Parte Carbajal, WR-66,713-03 at 53-56.  On July 12, 2004, the first day of petitioner's trial, the prosecutor read the exact same indictment to petitioner and the charge to the court mirrored the language of the indictment (2 R.R. 99-102; 1 C.R. 25-34).

The record does not support petitioner's allegation regarding the amendment of the indictment at trial.  Accordingly, summary judgment should be entered for respondent on this issue.

### 14.    Counsel failed to have a Spanish speaking attorney appointed to him (Item 1.s; 1.p.(2)).

Petitioner alleges that he asked the court to appoint a Spanish-speaking attorney to him because he could not understand all the issues at stake, but the request was denied and his counsel did not object to the denial.  In her affidavit, petitioner's counsel stated that petitioner requested a Spanish-speaking attorney because he did not like the facts that she was explaining to him or the results of her investigation and conversations with the potential witnesses.  She said he was fully conversant in English at all times, in and out of court (Foster Aff., Ex Parte Carbajal, WR-66,713-01at 147).

24

The record supports the attorney's assertion that petitioner spoke English and did not need an interpreter.  When he completed the request for a court-appointed attorney, he did not indicate that he needed an interpreter (I C.R. 4).  In the audiotape submitted to the jury petitioner conversed with his daughter in English (3 R.R. 18-34).  Also, he and his attorney had a conversation in English on the record regarding the fact that he had rejected the offer of a plea agreement (2 R.R. 111-112).  Finally, during the punishment phase of the trial, petitioner testified in English (4 R.R. 39-40).

Based on the record, petitioner's claim that his attorney was ineffective for failing to object to the denial of his request for a Spanish-speaking attorney is without merit.  Respondent is entitled to summary judgment on this issue.

### 15.    Counsel failed to object to the use of Danz and Tharp as outcry witnesses and also failed to object to other hearsay testimony and the testimony should not have been admitted (Items 1.p.(4); 1.p.(5); 1.p.(6); 2.a.).

Neither Tharp nor Danz testified as outcry witnesses.  The use of outcry witnesses provides an exception to the hearsay rule.  TEX. CRIM. PROC. CODE ANN. § 38.072 (Vernon 1995).  The statute applies only to statements made by a child 12 (now 14) years of age or younger that describe the alleged offense and were made to the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense.  B.C. in this case was not 12 or under at the time she made the statements to Danz and Tharp and their testimony regarding conversations with her was not treated as outcry testimony.

Petitioner also complains about Danz's testimony being admitted under the excited utterance exception to the hearsay rule, but there is no indication of that in the record.  Danz testified that B.C. would tell him that she was afraid of her father (3 R.R. 55) but he never testified regarding an excited utterance.  Without more, petitioner cannot show that his attorney provided ineffective assistance.  Respondent is entitled to summary judgment on this issue.

**16.    Counsel did not object when the prosecutor made inappropriate comments and asked impermissible hypothetical questions (Item 1.p.(1); 2.d.(1)).**

When determining whether there has been prosecutorial misconduct, the Supreme Court has commented that "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986)(quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)).  A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted.  Riddle v. Cockrell, 288 F.3d 713, 720 (5th Cir. 2002)(internal citations omitted).

Petitioner complains that throughout the trial the prosecutor referred to him as a "child molester" and "pedophile" and he also claims that the prosecutor engaged in misconduct when she asked the community supervision officer if petitioner would be a good candidate for probation.  A thorough review of the record shows that no where during the trial did the prosecutor refer to petitioner as a "child molester" or "pedophile."

26

Petitioner argues that the prosecutor engaged in misconduct when she asked the community supervision officer a hypothetical question regarding whether petitioner was a good candidate for probation.  Petitioner argues that because the officer was not qualified as an expert she was not qualified to give an opinion regarding petitioner's suitability for probation.  But the record shows that the prosecutor did not ask a hypothetical question. Rather, she asked, "Based on what you've learned about in this case, is this the type of case that your office would normally recommend probation for?" to which the officer answered, "No." (4 R.R. 45).  Even if this question were harmful to petitioner's case, it was not unfair. The community supervision officer knew what the criteria were for recommending a convicted sex offender be released to probation and her answer was relevant to the testimony on punishment.  As discussed above, it does not appear that the jury struggled with the question of whether to sentence petitioner to probation and there is no indication in the record that the jury would have granted petitioner a lesser sentence absent the prosecutor's question to the community supervision officer.  Accordingly, summary judgment should be entered for respondent on these issues.

**17.    Counsel failed to object when Tharp testified that B.C. had been truthful when she made statements to him (Item 1.p.(7)).**

Petitioner argues that his attorney should have objected when Tharp testified that B.C. had been truthful in making statements to him.  A review of the record shows that Tharp never testified that B.C.'s statements were true.  Plaintiff's assertion to the contrary is without merit.

27

18.   **Counsel failed to object to the prosecutor acting as a witness by drawing the female sexual organ on the chalkboard and also when she wrote portions of the audio-taped conversation on the chalkboard (Items 1.p.(9); 2.f.).**

Petitioner asserts that the prosecutor acted like a witness when she drew the female sexual organ and on a chalkboard and discussed it with the jury.  However, the record shows that the prosecutor did not make the drawing.  Rather, the nurse examiner made the drawing (3 R.R. 80-84 and SX-3).  Nor is there any indication that the prosecutor wrote portions of the audio-taped conversation on the chalkboard.  During her closing, the prosecutor apparently read to the jury from a transcript of the tape and petitioner's attorney objected to the reading of the transcript because it was not in evidence (4 R.R. 25).  The trial court instructed the jury that the transcript was not available and they were to confine their deliberations to the evidence that had been introduced.  He further told them that they could listen to the audiotape if they requested to do so (Id.).  Also, as noted earlier, the court reporter was able to transcribe the tape without any indication that it was unintelligible, so apparently the taped conversation was clear.  Petitioner has failed to show that the outcome of the trial would have been different had the prosecutor not read portions of a transcript to the jury and summary judgment should be entered for respondent on this issue.

D.   **Cumulative Error (Item 2.h.)**

Petitioner argues that the cumulative effect of the errors he asserts resulted in a denial of his substantive rights.

Federal habeas corpus relief may only be granted for cumulative errors in the conduct of a state trial where (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not

28

procedurally defaulted for habeas purposes; and (3) the errors "so infected the entire trial that the resulting conviction violates due process."

Turner v. Quarterman, 481 F.3d 292, 301 (5th Cir. 2007)(quoting Derden v. McNeel, 879 F.2d 1453, 1454 (5th Cir. 1992)(en banc) and Cupp v. Naughten, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)).  Where individual allegations of error are not of constitutional stature or are not errors, there is nothing to cumulate.  Id.

In this case, petitioner has failed to demonstrate that the trial court committed any errors of constitutional dimension.  Accordingly, summary judgment should be entered for respondent on this issue.

###### E.    Actual Innocence (Item 4).

Petitioner argues that he is actually innocent of the charges of sexual assault of his daughter.  In Herrera v. Collins, 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1992), the United States Supreme Court reiterated the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the constitution–not to correct errors of fact.  Id., 506 U.S. at 400, 113 S.Ct. at 860.  The court does not analyze the petitioner's guilt or innocence, but only whether his constitutional rights have been preserved.  Id.  A claim of "actual innocence" comes into play when a petitioner otherwise subject to defenses of abusive or successive use of the writ seeks to have his federal constitutional claim considered on the merits.  Under those circumstances, he must show that a failure to hear the claims would result in a miscarriage of justice.  Sawyer v. Whitley, 505 U.S. 333, 339, 112 S.Ct. 2514, 2518, 120 L.Ed.2d 269 (1992).  A showing of actual innocence can bring a petitioner within the narrow exception to the procedural bars.  Schlup v. Delo, 513 U.S. 298,

314-315, 115 S.Ct. 851, 861, 130 L.Ed.2d 808 (1995).  Actual innocence is not itself a

constitutional claim, but instead a gateway through which a habeas petitioner must pass to

have his otherwise barred constitutional claim considered on the merits.  Herrera, 506 U.S.

at 404, 113 S.Ct. at 862.

Petitioner in this case is not asserting that he is actually innocent in order to persuade

the court to hear a claim which otherwise would be procedurally barred.  Rather, he simply

is arguing that he is innocent of the charges on which he was convicted.  Such a claim is not

cognizable in a habeas corpus proceeding.  Accordingly, summary judgment should be

entered for respondent on this issue.

### F.    Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas

corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28

U.S.C. § 2253(c)(1)(A).  Although petitioner has not yet filed a notice of appeal, the issue of

whether he is entitled to a COA will be addressed.  See Alexander v. Johnson, 211 F.3d 895,

898 (5th Cir. 2000)(a district court may *sua sponte* rule on a COA because "the district court

that denies a petitioner relief is in the best position to determine whether the petitioner has

made a substantial showing of a denial of a constitutional right on the issues before that

court.  Further briefing and argument on the very issues the court has just ruled on would be

repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the

denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under §

2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>Slack v. Daniel</u>, 529 U.S. 473, 484, 120 S.Ct. 1604, 146 L.Ed.2d 542 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El</u>, 537 U.S. at 327, 123 S.Ct. at 1034.

A slightly different standard applies when the claims are dismissed on procedural grounds. In that instance, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack</u>, 120 S.Ct. at 1604, 529 U.S. at 484 (emphasis added).

In petitioner's case, it is recommended that his claims be dismissed on the merits. If the district court orders that petitioner's cause of action be dismissed, and petitioner seeks a COA in order to proceed with his case, it is further recommended that the COA be denied because he has not made the necessary showing for issuance of a COA.

## **<u>RECOMMENDATION</u>**

It is respectfully recommended that respondent's motion for summary judgment (D.E. 53) be granted. Petitioner's cause of action should be dismissed with prejudice because he

has failed to show that he is entitled to habeas corpus relief.  It is further recommended that any request for a Certificate of Appealability be denied.

Respectfully submitted this 1st day of February, 2010.

_____

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 80-5, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415 ( 5th Cir. 1996)(en banc).